Priority ✓
Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES--GENERAL**

Case No. CV 02-5194-PA(RCx) August 14, 2002

Title: DIRECTV, INC., a California Corporation v. DEREK E. TRONE, d/b/a WHITEVIPER TECHNOLOGIES, et al.

================================================================

**DOCKET ENTRY**

ENTERED AUG 15 2002

================================================================

**HON. ROSALYN M. CHAPMAN, UNITED STATES MAGISTRATE JUDGE**

Debra Taylor
Deputy Clerk

None
Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:
Michael E. Williams
Michael Rosenberger

ATTORNEYS PRESENT FOR DEFENDANT:
Neal R. Marder

**PROCEEDINGS: DEFENDANT AMERICAN PRECISION ELECTRONICS, INC.'S MOTION TO COMPEL PLAINTIFF TO PROVIDE ANSWERS WITHOUT OBJECTION AND PRODUCE DOCUMENTS RESPONSIVE TO REQUESTS FOR PRODUCTION OF DOCUMENTS 11-69 AND A FURTHER RESPONSE TO INTERROGATORY 2**

On July 19, 2002, defendant American Precision Electronics, Inc. filed a notice of motion and motion to compel plaintiff to provide answers without objection and produce documents responsive to requests for production of documents 11-69 and a further response to interrogatory 2 and joint stipulation, with supporting the declaration of Neal R. Marder and exhibits. On the same date, plaintiff filed the opposing declarations of Michael E. Williams with exhibit, Michael Rosenberger with exhibits, and Peter Klauss, Ph.D. On July 31, 2002, defendant filed its supplemental memorandum in support of its motion to compel and evidentiary objections to the declaration and exhibits of Michael Rosenberger[1] and the declaration of Peter Klauss,

---

[1] The Court grants, in part, and denies, in part, defendant's evidentiary objections to the declaration of Michael

376

Ph.D.[2]

Oral argument was held before Magistrate Judge Rosalyn M. Chapman on August 14, 2002. Plaintiff was represented by Michael E. Williams, attorney-at-law, with the law firm Quinn Emanuel Urquhart Oliver & Hedges, and Michael Rosenberger, attorney-at-law, with the law firm Yarmuth Wilsdon Calfo, and defendant was represented by Neal R. Marder, attorney-at-law, with the law firm Winston & Strawn.

**BACKGROUND**

This action commenced on April 2, 2001, when plaintiff DIRECTV filed its initial complaint against multiple defendants alleging they conspired to provide for the unlawful accessing of plaintiff's satellite television programming system. On November 28, 2001, plaintiff filed the pending Third Amended Complaint against multiple defendants, including defendant American Precision Electronics, Inc., a manufacturer. Third Amended Complaint ("TAC") ¶¶ 50, 72(bbb). The Third Amended Complaint sets forth the following twelve causes of action: (1)

---

Rosenberger and exhibits. Specifically, the Court denies defendant's objection that Rosenberger's declaration be stricken in toto. However, the Court grants defendant's objections to the extent it strikes from paragraph 2 the phrase "that DIRECTV's representatives determined were used for satellite signal theft," pursuant to Fed. R. Evid. 801-802, and strikes paragraph 3, pursuant to Fed. R. Evid. 401-402.

[2] The Court grants, in part, and denies, in part, defendant's evidentiary objections to the declaration of Peter Klauss, Ph.D. Specifically, the Court denies defendant's objection that Klauss' declaration be stricken in toto. However, the Court grants defendant's objections to the extent it strikes: from paragraph 7, the phrase "including the Terminator Bootloader," pursuant to Fed. R. Evid. 602, 701; from paragraph 10, the second sentence (lines 9-17), the phrase "The number of documents that 'pertain to' one of these subject areas is incalculable, given that" (lines 18-19), and the last sentence, pursuant to Fed. R. Evid. 602; from paragraph 12, the last two sentences (lines 14-15), pursuant to Fed. R. Evid. 701; paragraph 13, pursuant to Fed. R. Evid. 701; and from paragraph 14, every sentence except the third and fourth sentences (lines 23-24), pursuant to Fed. R. Evid. 602, 701.

facilitating the unauthorized reception of satellite signals in violation of the Communications Act, 47 U.S.C. § 605(a); (2) manufacture and sale of signal theft devices in violation of the Communications Act, 47 U.S.C. § 605(e)(4); (3) manufacture of and traffic in signal theft devices in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2); (4) manufacture of and traffic in signal theft devices in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(b)(1); (5) unauthorized interception of electronic communications in violation of the Federal Wiretap Laws, 18 U.S.C. § 2511(1)(a); (6) manufacture and sale of signal theft devices in violation of Federal Wiretap Laws, 18 U.S.C. § 2512(1)(b); (7) manufacture and sale of signal theft devices in violation of California Penal Code § 593d and e; (8) misappropriation of trade secrets in violation of California Civil Code §§ 3426-3426.11;[3] (9) unjust enrichment; (10) tortious interference with contractual relations; (11) tortious interference with prospective contractual relations; and (12) statutory and common law unfair competition. Plaintiff seeks actual, statutory and punitive damages, injunctive relief, attorney's fees, and other relief.

The allegations of the Third Amended Complaint are briefly summarized as follows: Plaintiff "is the nation's leading direct broadcast satellite system, delivering approximately 225 channels of digital entertainment and informational programming to approximately 10.3 million homes and businesses equipped with specialized DIRECTV receiving equipment." TAC ¶ 2. This equipment includes "a small satellite dish (typically 18 inches in size), an integrated receiver/decoder ('IRD') and an Access Card which is necessary to operate the IRD." TAC ¶ 59. News Datacom Limited, NDS Americas, Inc., and NDS Limited "developed the technology and equipment used by DIRECTV to encrypt its transmissions, including Access Cards which, upon activation by DIRECTV, permit subscribers to view DIRECTV's television programming in a decrypted - descrambled - format." TAC ¶¶ 3, 60-68. Plaintiff sells satellite television programming, for which a subscriber purchases plaintiff's receiving equipment and usually pays plaintiff a monthly service fee and additional fees for ordered "pay-per-view" events and movies. TAC ¶¶ 62-63. Multiple defendants, including defendant American Precision

[3] On July 31, 2002, District Judge Percy Anderson granted plaintiff's request to dismiss this cause of action.

Electronics, Inc. "have enegaged [sic] in repeated illegal and improper acts, practices and schemes: (a) to assist . . . the illegal and unauthorized reception and decryption of DIRECTV's satellite transmissions . . . by persons not authorized to receive such programming; (b) to defraud DIRECTV of subscription and pay-per-view revenues and other valuable consideration by trafficking, distributing, and selling [devices] intended to facilitate the reception and decryption of DIRECTV's satellite television programming without authorization by or payment to DIRECTV; (c) to defraud DIRECTV of revenues and other valuable consideration by trafficking, distributing, and selling [devices] intended to illegally modify DIRECTV's Access Cards; (d) . . . to infringe DIRECTV's proprietary interests . . . by copying, reproducing, cloning and modifying computer programs . . . developed by or on behalf of DIRECTV, without authorization by or payment to DIRECTV; (e) to interfere with DIRECTV's contractual and prospective business relations . . . ; and (f) to conceal defendants' fraudulent schemes and activities from and to hinder detection by DIRECTV and law enforcement officials." TAC ¶ 70.

On November 28, 2001, District Judge David O. Carter issued a Temporary Restraining Order against defendant, and on December 14, 2001, defendant stipulated to a preliminary injunction and impoundment. On February 1, 2002, defendant answered the Third Amended Complaint.

## DISCUSSION

## I

The parties' joint stipulation establishes that on February 21, 2001, defendant served plaintiff's out-of-town counsel with its first set of interrogatories and first set of requests for production of documents on plaintiff; however, defendant did not serve this discovery on all other parties, or even on plaintiff's local counsel. Marder Decl., ¶¶ 2-3, Exhs. A-B. This violates Fed. R. Civ. P. 5(a), which provides that "every paper relating to discovery required to be served upon a party unless the court otherwise orders . . . shall be served upon each of the parties."[4] See also Advisory Committee's Notes to the 1970 Amendment to Rule 5 ("[A]ll papers relating to

[4] Here, the Court has not ordered otherwise.

discovery which are required to be served on any party must be served on all parties, unless the court orders otherwise."). A month later, on March 22, 2002, defendant properly served all parties with the discovery, and plaintiff responded to the discovery on March 29, 2002. Williams Decl., ¶ 3, Exh. A. Thus, plaintiff's responses are timely. Fed. R. Civ. P. 33(b)(3), 34(b).

II

Interrogatory no. 2 asks: "IDENTIFY the specific damages that YOU have suffered as a result of each cause of action set forth in YOUR COMPLAINT." In response, plaintiff stated:

> DIRECTV objects to this interrogatory on the grounds it assumes that DIRECTV must prove actual damages rather than statutory damages as set forth in the complaint. Subject [to] this objection and without waiving it, DIRECTV states that it loses approximately $204.56 per month in subscription and pay-for-view fees for each pirate device in use. Given that [defendant] produced more than 100,000 pirate devices in 2001 alone, damages resulting from [defendant's] conduct exceed $20 million.

Jt. Stip., Exh. E at 82. Defendant seeks to compel further responses to this interrogatory, arguing plaintiff fails to address "specific damages claimed for each cause of action." Plaintiff argues it has fully answered the interrogatory. Defendant is correct. As set forth above, plaintiff has several different claims against defendant, and defendant is entitled to know its exposure on each claim; yet, plaintiff's answer to this interrogatory does not provide that information.

III

Rule 26(b)(1), as recently amended, permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party. . . ." The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections. Blankenship v. Hearst Corp., 519 F.2d

418, 429 (9th Cir. 1975); Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D. N.J. 1990). All discovery, and federal litigation generally, is subject to Rule 1, which directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

Request for production nos. 11-69 generally seek "[a]ny and all DOCUMENTS pertaining" to the design, manufacture, programming, processes, interrelationships, dissemination, effects on, and the like of: access cards, integrated/receiver decoders, algorithms used to encrypt plaintiff's transmissions, electronic countermeasures ("ECM") to disable illegally modified access cards, satellite piracy publications, ECM taken on January 21, 2001, hashing, glitching, flashing, cloning, cleaning, and lots more. In short, defendant seeks all documents pertaining to the creation and operation of plaintiff's satellite television programming system and plaintiff's efforts to prevent that system from being accessed by others without authorization by, or payment to, plaintiff. Plaintiff has refused to provide any documents responsive to these requests, arguing such documents are trade secrets or other commercial information vital to plaintiff's survival and unnecessary for any defense against the allegations in the Third Amended Complaint. Specifically, plaintiff argues this case is not about how its technology works, or what it does to prevent the pirating of its technology or satellite television programming, but rather is solely about whether the devices manufactured by defendant, a circuit board manufacturer, assist others in the unlawful access of plaintiff's satellite television programming. On the other hand, defendant argues documents responsive to these requests are necessary for it to present its defense.

The declaration of Dr. Peter Klauss, plaintiff's Senior Director of Technology for the Conditional Access Department, establishes the information defendant seeks (regarding access cards, IRDs, ECMs, etc.) is confidential information or trade secrets, and plaintiff would be harmed by the disclosure of such information, Klauss Decl., ¶¶ 1, 3-12, and defendant does not dispute this.[5] See e.g., Hartley Pen Company v. United States

---

[5] See, e.g., Defendant's Supplemental Memorandum at 3:22-4:18 (arguing the Court can adequately protect plaintiff's trade secrets).

District Court for the Southern District of California, 287 F.2d 324, 325 (9th Cir. 1961) ("[I]nk made under a secret formula compris[es] a trade secret. . . ."); Compaq Computer Corp. v. Packard Bell Electronics, Inc., 163 F.R.D. 329, 338 (N.D. Cal. 1995) (procedures for recycling computer parts constitute trade secrets). Dr. Klauss sets forth in a simple, yet quite detailed, manner the way in which plaintiff's satellite television programming system works and its vulnerability to "[p]irates [who] have developed, and sell for profit, devices that alter the programming on the Access Card so as to permit users to receive programming without authorization." Klauss Decl., ¶¶ 1-7. Dr. Klauss further establishes that plaintiff "spends enormous time and money in developing electronic countermeasures, ECMs, to disable illegally modified (i.e., pirate) Access Cards." Klauss Decl., ¶¶ 7, 9. However, the designers and manufacturers of pirating devices continually "develop a technology to overcome the ECM. . . ." Klauss Decl., ¶ 7. Finally, Dr. Klauss states the Conditional Access Department "is involved in all aspects of the security of the broadcast signal," and, as director of that department, he has reviewed the requests for production of documents at issue and finds their "subject areas constitute the daily and historic work of the Conditional Access Department. . . . The documents requested by [defendant] are as secret as any in the company, and the Conditional Access Department goes to great lengths to prevent their disclosure. . . . In fact, some documents requested . . . cannot be viewed even by many of those working in the Conditional Access Department." Klauss Decl., ¶¶ 8, 10-11.

There is no absolute privilege for trade secrets and similar confidential information. Federal Open Market Committee v. Merrill, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813, 61 L.Ed.2d 587 (1979); Hartley Pen Co., 287 F.2d at 330; Centurion Industries, Inc. v. Warren Steurer & Assoc., 665 F.2d 323, 325 (10th Cir. 1981). Nevertheless, as the Advisory Committee Notes to the 1970 Amendment to Rule 26(c) state: "[Although] courts have not given trade secrets automatic and complete immunity against disclosure, [they] have in each case weighed their claim to privacy against the need for disclosure." Similarly, the Eighth Circuit has commented:

> In light of the protection afforded to trade secrets by Rule 26(c)(7), courts have attempted to reconcile the competing interests in trade secret discovery disputes. First, the

> party opposing discovery must show that the information is a 'trade secret or other confidential research, development, or commercial information' under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the property. The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. [¶] If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information. If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed.

In re Remington Arms Company, Inc., 952 F.2d 1029, 1032 (8th Cir. 1991) (citations omitted); see also Hartley Pen Co., 287 F.2d at 330-31 ("[A] disclosure of trade secrets will be required only where such disclosure is relevant and necessary to the prosecution or defense of a particular case[,]" and "the burden rests upon the party seeking disclosure to establish that the trade secret sought is relevant and necessary to the prosecution or defense of the case before a court is justified in ordering disclosure.")

Here, defendant argues the information regarding plaintiff's technological measures is both relevant and critical to its defense of this action because the "heart" of plaintiff's case is that defendant "'manufactured devices designed to circumvent [plaintiff's] encryption technology in order to permit the unauthorized viewing of [plaintiff's] satellite broadcast.'" Jt. Stip. at 26:16-26 (citation omitted). More specifically, defendant argues it "must be permitted to analyze Plaintiff's documents concerning its technological measures to: (1) defend against Plaintiff's allegations of knowledge, willfulness and malice; (2) prove it was unaware of Plaintiff's technological measures; (3) prove it did not design the devices; (4) prove it did not manufacture the devices to circumvent Plaintiff's technological measures; (5) prove the devices it manufactured are industry standard tools to program smart cards and that it is software used with a smart car that must be 'specifically designed' to circumvent Plaintiff's technological measures; and

(6) prove that it did not manufacture the devices for an unlawful purpose." Supp. Memo. at 3:6-15. Yet, these arguments are not supported by specifics, and none of them explains why defendant must have access to plaintiff's proprietary information regarding the design, manufacture, etc., of plaintiff's satellite television programming system and its anti-piracy efforts to demonstrate that defendant's actions were not willful, defendant did not manufacture the devices for an unlawful purpose, and defendant had no knowledge of plaintiff's technological measures. Thus, defendant has not shown either its need for, or the relevance under Rule 26(b)(1) of, the requested information, and its motion to compel must be denied.[6] Hartley Pen Co., 287 F.2d at 331; In re Remington Arms Co., Inc., 952 F.2d at 1032; see also Pioneer Hi-Bred Int'l Inc. v. Holden's Found. Seeds, Inc., 105 F.R.D. 76, 82-83 (N.D. Ind. 1985) (plaintiff's "general, conclusory assertions" are insufficient to establish need for or relevance of trade secrets).

**ORDER**

1. Defendant's motion to compel further responses to interrogatory no. 2 is granted, and plaintiff shall provide such responses no later than ten (10) days from the date of this Order.

2. Defendant's motion to compel responses to request for production of documents nos. 11-69 is denied.

---

[6] Moreover, the requests for production of documents are, for the most part, overly broad, pertaining to documents that relate to all defendants, rather than solely to defendant American Precision Electronics, Inc.

case025\02-5194.1
8/14/02

Service List:

Scott Wilsdon
Deborah Boylston
Michael Rosenberger
Yarmuth Wilsdon Calfo PLLC
3080 Washington Mutual Tower
1201 Third Avenue
Seattle, WA 98101-3000

Dale H. Oliver
Michael E. Williams
Quinn Emanuel Urquhart
Oliver & Hedges, LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA 90017-2543

Donald Segretti
Law Offices of Donald Segretti
8 Corporate Park
Suite 200
Irvine, CA 92606

Thomas W. Harris, Jr.
Law Offices of
Thomas W. Harris
109800 MacArthur Boulevard
Suite 1425
Irvine, CA 92612-2421

John J. Lulejian
Office of United States Attorney
601 Union Street
Suite 5100
Seattle, WA 98101-3903

Terry Souders
Law Offices of Terry P. Souders
12459 Lewis Street
Suite 202
Garden Grove, CA 92840-6606

Neal R. Marder
Berj K. Parseghian
Winston & Strawn
333 South Grand Street
38th Floor
Los Angeles, CA 90071-1543

William Zinn
5051 E. Orangethorpe Avenue,
#D-155
Anaheim, CA 92807

Jay M. Coggan
Law Offices of Jay M. Coggan
1801 Century Park East
26th Floor
Los Angeles, CA 90067-2343

William David Evans
Evans Brizendine & Silver
P.O. Box 1967

Rodney L. Donohoo
Law Offices of
Rodney L. Donohoo
1551 4th Avenue, Suite 210
San Diego, CA 92101

Peter J. Linden
Law Offices of Peter J. Linden
2500 Anniversary Lane
Newport Beach, CA 92660-3314

Robert Meadows
2615 Deerfield Circle
Marietta, GA 30064

Honorable Percy Anderson

Initials of Deputy Clerk ____